UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:24-CR-19-KAC-JEM-1 |
| TODD EVANS, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER
OVERRULING DEFENDANT'S OBJECTIONS**

This criminal action is before the Court on (1) Defendant Todd Evans's "Objections to Report and Recommendation" [Doc. 296], in which he objects to United States Magistrate Judge Jill E. McCook's October 16, 2024 "Report and Recommendation" ("Report") [Doc. 289], and (2) Defendant Joshua Vanriette's motion for leave to adopt Defendant Evans's objections to the Report [Doc. 297]. For the foregoing reasons, the Court overrules the objections and accepts and adopts the Report in its entirety.

**I.    Background**

Beginning in 2022, law enforcement "investigated the illegal activities associated with" Defendant Evans "and his drug-trafficking organization" [Doc. 263-1 at 13]. By the time the United States sought a wiretap, its investigative goals were, among others, "to obtain evidence to fully prosecute" the named Defendants, "and others as yet unknown," and to discover "the full scope and identities of key personnel involved in illegal drug trafficking of behalf of" Defendant Evans and his organization [3:23-mc-74, Doc. 2 ¶¶ 73-74; 3:23-mc-76, Doc. 2 ¶¶ 71-73; 3:24-mc-3, Doc. 2 ¶¶ 87-89]. The United States acknowledged that it had discovered "important aspects of the composition and activities" of the named Defendants, but "critical aspects of the [organization]

remain[ed] unknown" [3:23-mc-74, Doc. 2 ¶ 75; 3:23-mc-76, Doc. 2 ¶ 74; 3:24-mc-3, Doc. 2 ¶ 90]. The United States asserted that it would not achieve its investigatory goals "unless the whole supply chain" "[wa]s dismantled" [3:23-mc-74, Doc. 2 ¶ 75; 3:23-mc-76, Doc. 2 ¶ 74; 3:24-mc-3, Doc. 2 ¶ 90].

The United States applied for, and received authorization for, three (3) wiretaps of three (3) separate phone numbers that Defendant Evans used [3:23-mc-74, Docs. 1, 2; 3:23-mc-76, Docs. 1, 2; 3:24-mc-3, Docs. 1, 2]. Among other things, the fulsome Affidavit in support of each Application discussed why other traditional investigative techniques—including additional confidential sources, controlled drug purchase, physical surveillance, undercover agents, search warrants, trash searches, and subpoenas—had not and would not achieve the United States's goals [3:23-mc-74, Doc. 2 ¶¶ 77-106; 3:23-mc-76, Doc. 2 ¶¶ 75-104; 3:24-mc-3, Doc. 2 ¶ 91-133]. As just one example, a confidential human source informed the United States that Defendant Evans told him that a codefendant "saw what she believed to be police" at a particular residence related to the organization [3:23-mc-74, Doc. 2 ¶ 75; 3:23-mc-76, Doc. 2 ¶ 74; 3:24-mc-3, Doc. 2 ¶ 90]. Law enforcement did "not observe[]" any defendant at that residence afterward [3:23-mc-74, Doc. 2 ¶ 75; 3:23-mc-76, Doc. 2 ¶ 74; 3:24-mc-3, Doc. 2 ¶ 90]. Upon thorough review, the Court approved each Application [3:23-mc-74, Doc. 3; 3:23-mc-76, Doc. 3; 3:24-mc-3, Doc. 3].

Ultimately, a grand jury charged Defendant Evans and fifteen (15) other coconspirators with various offenses, including drug trafficking, money laundering, and firearm offenses [*See* Doc. 3, *sealed]. On July 29, 2024, Defendant Evans moved to suppress the evidence the United States obtained through the three (3) wiretaps [Doc. 248]. As relevant here, Defendant Evans argued that the United States failed to establish that the wiretaps were necessary

2

Case 3:24-cr-00019-KAC-JEM   Document 332   Filed 11/21/24   Page 2 of 7   PageID #: 1192

to the investigation [*See* Doc. 248 at 5].  On August 12, Defendant Vanriette filed a Motion to join Defendant Evans's Motion to Suppress [*See* Doc. 261].  And on August 15, Defendant Henri Ewing filed his own Motion to join Defendant Evans's Motion to Suppress [Doc. 267].

The Report, filed October 16, recommends that the Court grant Defendant Vanriette's Motion to join Defendant Evans's Motion to Suppress [*See* Doc. 289 at 14, 22]. The Report further recommends that the Court deny Defendant Ewing's Motion to join Defendant Evans's Motion to Suppress because he lacks standing [*Id.* at 14-15, 22].  And the Report recommends that the Court ultimately deny the Motion to Suppress because, as salient here, the relevant Affidavits made a "full and complete" showing satisfying 18 § U.S.C. 2518(1)(c) [*Id.* at 19-22].

On October 30, Defendant Evans filed the instant Objections, asserting that the Report's legal conclusion regarding Section 2518(1)(c) is erroneous because the wiretaps in this case were "superfluous" and the United States could have obtained any additional information it needed without the wiretaps [*See* Doc. 296 at 2-3].  On November 1, Defendant Vanriette filed his motion to adopt Defendant Evans's objections [Doc. 297].  On November 6, the United States responded in opposition to Defendant's Objections [Doc. 305].  Defendant Ewing did not object to the Report.

II.     **Analysis**

Under 28 U.S.C. § 636(b)(1), the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C). The Court considers timely objections under Section 636(b)(1)(C) and Federal Rule of Criminal Procedure 59(b) de novo.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim P. 59(b)(3).

Before the United States can conduct a wiretap, it "must satisfy Title III"—18 U.S.C. §§ 2510-2520.  *See United States v. Gardner*, 32 F.4th 504, 514 (6th Cir. 2022).  "Title III imposes a heightened warrant requirement," requiring the United States to "show probable cause" and

3

"necessity." *Id.* (citing 18 U.S.C. § 2518(3); *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002)). Section 2518(1)(c)'s "necessity" requirement requires the United States to make "a full and complete statement as to whether" it has tried and failed to achieve its investigative goals using "other investigative procedures" "or" why the other investigative procedures "reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* (citing 18 U.S.C. § 2518(1)(c)). The Court assesses three (3) criteria to determine whether the United States has satisfied Section 2518(1)(c). *Id.* at 515.

*First*, the United States may not use a wiretap as "the initial step" in an investigation. *Id.* (citation omitted). *Second*, the United States may not "resort to wiretapping in circumstances where traditional investigative techniques would suffice to expose the crime." *See id.* (quotation marks and citation omitted). This, however, does not require the United States to "prove the impossibility of other means of obtaining information." *Id.* (citation omitted). Instead, the United States "need only give serious consideration to the non-wiretap techniques" and inform the Court why "non-wiretap techniques have been or will likely be inadequate." *Id.* at 516 (quotation marks and citation omitted). *Third*, while an affidavit from law enforcement officers "may rely on prior experience," in requesting a wiretap, the affidavit "must apply those experiences to the particular facts of the case." *Id.*

Here, Defendant Evans objects to the Report's Section 2518(1)(c) conclusion on two (2) grounds. *First*, he argues that the United States's investigation before seeking the wiretaps "produced ample evidence of drug activity and who the members of the local drug conspiracy were," making each wiretap unnecessary [Doc. 296 at 2]. *Second*, Defendant Evans argues that the United States failed to show "why [it] could not continue with less intrusive techniques" [*Id.* at 3]. But Defendant Evans misconceives the Section 2518(1)(c) inquiry.

4

As to his first objection, that the investigation may have produced sufficient evidence to prosecute Defendant Evans, and others, for certain offenses does not itself undermine the "necessity" of securing a wiretap here. "The necessity yardstick does not measure *how much* of the government's investigatory goals" it achieves. *See United States v. Mosely*, 53 F.4th 947, 955 (6th Cir. 2022). Instead, the law "asks whether, as a binary matter," the United States "has met its investigatory goals." *Id.* (citation omitted). And nothing in the law "requires the government to call off its investigation after it achieves only some of its goals." *See Gardner*, 32 F.4th at 515 (citing *United States v. Castro*, 960 F.3d 857, 864 (6th Cir. 2020) (collecting cases)). The United States specified in each Affidavit that its goals were dismantling the entire criminal enterprise and discovering the source, distribution channels, and customers of the broader criminal activity, not simply prosecuting local drug trafficking [3:23-mc-74, Doc. 2 ¶¶ 73-75; 3:23-mc-76, Doc. 2 ¶¶ 71-73; 3:24-mc-3, Doc. 2 ¶¶ 87-89]. And the United States had not met those goals by the time it applied for each wiretap.

As to the second objection, each of the Affidavits submitted in support of each Application detailed alternative investigative techniques and why each had been or would be inadequate to fulfill the United States's goals [3:23-mc-74, Doc. 2 ¶¶ 77-106; 3:23-mc-76, Doc. 2 ¶¶ 75-104; 3:24-mc-3, Doc. 2 ¶ 91-133]. Importantly, the United States "need only give serious consideration to the non-wiretap techniques." *See Gardner*, 32 F.4th at 516. The law does not require the United States to "prove the impossibility of other means." *Id.* Each of the Affidavits clears that hurdle. And the law does not require the United States to engage in investigative techniques that would "alert other members of the conspiracy of the investigation." *Id.* (citation omitted). Each Affidavit describes nearly a dozen alternative techniques the United States considered or tried prior to applying for the wiretap and why each alternative was inadequate to meet the United States's

5

goals [3:23-mc-74, Doc. 2 ¶¶ 77-106; 3:23-mc-76, Doc. 2 ¶¶ 75-104; 3:24-mc-3, Doc. 2 ¶ 91-133]. Indeed, the Affidavits describe how members of the organization may have changed their behavior in response to use of one of the investigative techniques the United States deployed before seeking a wiretap [3:23-mc-74, Doc. 2 ¶ 75; 3:23-mc-76, Doc. 2 ¶ 74; 3:24-mc-3, Doc. 2 ¶ 90]. "Each affidavit listed the traditional techniques investigators had tried before and explained why those techniques wouldn't reveal the scope of the entire drug-trafficking conspiracy." *See Gardner*, 32 F.4th at 516. Defendant Evans's objections to the Report therefore lack merit, and the Court overrules them.

Additionally, Defendant Vanriette's motion for leave to adopt Defendant Evans's objections to the Report [Doc. 297] is untimely—he had to object within fourteen (14) days of the filing of the Report and asked to join defendant Evans's objections on Day 16. *See* Fed. R. Crim. P. 59(b)(2). Defendant Vanriette's failure to timely file his Motion forfeits his right to review. *See id.*; *see also United States v. Olano*, 507 U.S. 725, 733 (1993); *Berkshire v. Beauvis*, 928 F.3d 520, 530 (6th Cir. 2019). At any rate, even if the Court granted Defendant Vanriette permission to object out of time, the Court adopts the Report in its entirety. Accordingly, the Court denies Defendant Vanriette's Motion.

### III. Conclusion

For the reasons above, the Court **OVERRULES** Defendant Evans's "Objections to Report and Recommendation" [Doc. 296]. And the Court **ACCEPTS** and **ADOPTS** the Report in its entirety. The Court therefore:

(1) **GRANTS** Defendant Vanriette's motion to join in the suppression motion [Doc. 261];

(2) **DENIES** Defendant Ewing's motion to join in the suppression motion [Doc. 267];

(3) **DENIES** the Motion to Suppress filed by Defendant Evans [Doc. 248]; and

6

(4) **DENIES** Defendant Vanriette's motion for leave to adopt Defendant Evans's objections to the Report [Doc. 297].

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge